UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHIQUITA SWIFT,

   Plaintiff,            Hon. Paul L. Maloney

v.                    Case No. 1:07-CV-1064

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant.
_____/

**REPORT AND RECOMMENDATION**

   This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

   Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 42 years of age at the time of the ALJ's decision. (Tr. 22, 40). She successfully completed high school and has attended several college classes. (Tr. 81). Plaintiff has worked previously as a corrections officer. (Tr. 59-60).

Plaintiff applied for benefits on August 20, 2004, alleging that she had been disabled since April 26, 2004, due to back pain. (Tr. 32, 75). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 27-39). On December 19, 2006, Plaintiff appeared before ALJ Thomas Walters, with testimony being offered by Plaintiff and vocational expert, Dr. Donald Hecker. (Tr. 224-46). In a written decision dated March 30, 2007, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 13-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 3-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On March 29, 2004, Plaintiff was examined by Dr. Michael Winkelpleck. (Tr. 217-18). Plaintiff reported that she was experiencing low back pain. (Tr. 217). Plaintiff reported that

she first began experiencing back pain following a 1987 traffic accident. (Tr. 217). The doctor noted that Plaintiff was suffering only "mild distress with respect to her current complaints." (Tr. 218). Plaintiff exhibited a normal gait and was able to heel/toe walk without difficulty. (Tr. 218). An examination of Plaintiff's lumbar spine revealed tenderness, but straight leg raising was negative and Plaintiff exhibited "full and pain-free" range of hip motion. (Tr. 218). Plaintiff was able to flex forward and reach her fingers to within six inches of the floor. (Tr. 218).

On April 12, 2004, Plaintiff was examined by Dr. Charles Xeller. (Tr. 211-15). Plaintiff reported that she was experiencing back pain which occasionally radiated into her right leg. (Tr. 212). An examination of Plaintiff's lower back revealed "some" evidence of spasm. (Tr. 214). Plaintiff exhibited limited range of spinal motion. (Tr. 214). Straight leg raising was negative and the doctor observed no evidence of radiculopathy. (Tr. 214-15). Plaintiff exhibited full range of motion in her hips, knees, and ankles. (Tr. 214). Patrick's test[1] and Trendelenburg's test[2] were both negative. (Tr. 214). X-rays of Plaintiff's lumbar spine were "normal." (Tr. 214). Dr. Xeller concluded that Plaintiff "can perform any job or function that does not involve repetitive bending or lifting more than 25 pounds." (Tr. 215).

On April 19, 2004, Plaintiff was examined by Dr. Ryan O'Connor. (Tr. 210). Plaintiff was in "no apparent distress." (Tr. 210). Plaintiff exhibited tenderness throughout her

---

[1] Patrick's test is used to determine whether a patient suffers from arthritis of the hip joint. This test is also referred to as Fabere's sign. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* P-81 (Matthew Bender) (1996).

[2] Trendelenburg's test is "a test of the valvular competence of the leg veins in which the leg is raised above the level of the heart until the veins are empty and then the leg is rapidly lowered." *See* Trendelenburg's Test, available at http://medical-dictionary.thefreedictionary.com/Trendelenburg's+test (last visited on December 30, 2008).

lumbar spine, "nerve root tension signs [were] negative" and Plaintiff's gait was "stable." (Tr. 210). The doctor concluded that Plaintiff was permanently limited to "light-duty" work. (Tr. 210).

Plaintiff received a lumbar facet injection on April 27, 2004. (Tr. 207). On May 10, 2004, Plaintiff reported that her back pain and range of motion were improved. (Tr. 206). The doctor observed that Plaintiff's lower extremity motor strength was "nearly intact" and that there was no evidence of nerve root tension signs. (Tr. 206).

On May 18, 2004, Plaintiff was examined by Dr. O'Connor. (Tr. 205). Plaintiff reported that her lower back pain had improved. (Tr. 205). An examination of Plaintiff's spine revealed evidence of "mild tenderness." (Tr. 205). Straight leg raising was negative and Plaintiff was able to fully flex her lumbar spine. (Tr. 205). An examination of Plaintiff's lower extremities revealed "4+ to 5/5 strength throughout." (Tr. 205). Dr. O'Connor again reiterated that Plaintiff was able to perform "light-duty" work. (Tr. 205). Plaintiff began participating in physical therapy on May 21, 2004. (Tr. 137).

On May 25, 2004, Plaintiff was examined by Dr. O'Connor. (Tr. 216). Plaintiff exhibited "mild" tenderness throughout her lumbosacral spine, but exhibited 5/5 strength throughout her extremities. (Tr. 216). Plaintiff walked with a "stable" gait and the doctor discerned no evidence of neurovascular deficit. (Tr. 216). Dr. O'Connor again concluded that Plaintiff was permanently limited to the performance of "light" work. (Tr. 216).

On June 4, 2004, Plaintiff participated in a CT scan of her neck, the results of which revealed no evidence of "soft tissue mass or other abnormality." (Tr. 174-75). On June 19, 2004, Plaintiff participated in an MRI examination of her brain, the results of which were "negative" with "no evidence for intracranial abnormality." (Tr. 172).

When examined by her physical therapist on June 21, 2004, Plaintiff reported that she still experienced pain "with activity and after sitting too long." (Tr. 137). However, she rated this pain as only "4-5/10." (Tr. 137). Plaintiff reported that her "pain and stiffness are better" and that her range of motion (both active and passive) was "better." (Tr. 137).

On July 15, 2004, Plaintiff reported to her physical therapist that she was "a lot better since doing PT." (Tr. 114). Plaintiff reported that she was "walking more [and] also taking bike rides." (Tr. 114). On July 21, 2004, Plaintiff reported that her pain, stiffness, and range of motion were all significantly improved. (Tr. 136). On August 2, 2004, Plaintiff reported to her physical therapist that she was "sore" after playing badminton the previous weekend. (Tr. 109). On August 6, 2004, Plaintiff reported that she was "much better overall." (Tr. 106). On August 10, 2004, Plaintiff reported that she was feeling "really good." (Tr. 104).

On August 23, 2004, Plaintiff was examined by Dr. O'Connor. (Tr. 202). Plaintiff reported that her spine was "stable" with no radiation of pain into her lower extremities. (Tr. 202). An examination of Plaintiff's spine revealed "mild tenderness." (Tr. 202). Plaintiff exhibited 5/5 strength throughout her lower extremities and the doctor observed no evidence of nerve root tension signs. (Tr. 202). Plaintiff reported that her condition continued to improve and that she was presently walking "up to" one mile. (Tr. 134). Dr. O'Connor reiterated that Plaintiff could not perform her previous work, but could perform "light-duty" work. (Tr. 202).

Physical therapy treatment notes dated August 25, 2004 indicate that Plaintiff was exhibiting "better" strength and that her range of motion was "WNL" (within normal limits). (Tr. 98). On September 3, 2004, Plaintiff reported that she was doing "better" with "more mobility" in her lower back and lower extremities. (Tr. 93). Plaintiff rated her pain as "0/10." (Tr. 93). On

6

September 8, 2004, Plaintiff reported that she "felt really good." (Tr. 92). The physical therapist reported that Plaintiff exhibited 4/5 strength and that her range of motion was "WNL" (within normal limits). (Tr. 92). On September 10, 2004, Plaintiff reported that she was "feeling really good." (Tr. 90).

On February 18, 2005, Plaintiff received a second lumbar facet injection. (Tr. 198).

On May 10, 2005, Plaintiff was examined by Dr. O'Connor. (Tr. 195). Plaintiff reported that she was presently attending school, "retraining for new jobs," and was "doing quite well." (Tr. 195). Plaintiff reported experiencing lower back pain, but no radicular symptoms. (Tr. 195). An examination of Plaintiff's lumbar spine revealed "moderate tenderness." (Tr. 195). Straight leg raising was negative and her "standing balance and gait [were] stable." (Tr. 195). Dr. O'Connor instructed Plaintiff to begin "actively participating" in an aerobic exercise program. (Tr. 195). The doctor also instructed Plaintiff to continue her bicycle riding activities. (Tr. 195).

On October 25, 2005, Plaintiff was examined by Dr. O'Connor. (Tr. 190). Plaintiff was "in no apparent distress" and she exhibited no evidence of "spinal nerve root tension signs." (Tr. 190). Plaintiff was instructed to participate in an exercise and stretching program. (Tr. 190).

On February 21, 2006, Plaintiff participated in a series of x-rays of her lumbosacral spine, the results of which revealed that the "vertebral body heights, interspaces and pedicles" were "unremarkable." (Tr. 166). There was likewise "no evidence of fracture or dislocation." (Tr. 166). X-rays of Plaintiff's cervical spine, taken the same day, revealed "arthritic changes with no evidence of acute fracture or dislocation." (Tr. 165). The results of a CT scan of Plaintiff's head, also performed the same day, were "negative." (Tr. 167).

On April 10, 2006, Plaintiff was examined by Dr. O'Connor. (Tr. 186). Plaintiff reported that her ability to function had "improved" and that she was "swimming and bicycling." (Tr. 186). Plaintiff was "in no apparent distress" and straight leg raising was negative. (Tr. 186). Plaintiff exhibited "4+ to 5/5" strength and there was no evidence of focal neurovascular deficits. (Tr. 186). Dr. O'Connor characterized Plaintiff's condition as "stable." (Tr. 186).

On September 18, 2006, Dr. O'Connor completed an assessment of Plaintiff's ability to perform work-related activities. (Tr. 176-79). The doctor reported that Plaintiff can frequently lift/carry 10 pounds. (Tr. 176). The doctor reported that during an 8-hour workday, Plaintiff can stand and/or walk for less than two hours and can sit for less than six hours. (Tr. 176-77). Dr. O'Connor reported that Plaintiff can "never" climb, balance, kneel, crouch, crawl, or stoop. (Tr. 177). The doctor reported that Plaintiff can occasionally: (1) reach in all directions (including overhead); and (2) perform gross and fine manipulation activities. (Tr. 178).

Treatment notes dated November 22, 2006, reveal that Plaintiff was presently attending college. (Tr. 222).

## ANALYSIS OF THE ALJ'S DECISION

**A. Applicable Standards**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled"

8

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) degenerative lumbar spondylosis; (2) history of myofascial pain; and (3) history of headaches. (Tr. 15). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ concluded that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 18-22). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Supported by Substantial Evidence**

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable

---

will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) she can occasionally lift/carry 10 pounds and can frequently lift 5 pounds; (2) she cannot engage in prolonged standing or prolonged walking greater than 100 yards at one time; (3) she can occasionally twist, turn, bend, climb, crawl, squat, kneel; (4) she cannot use foot controls; (5) she can perform unskilled work that does not expose her to dangerous moving machinery or unprotected heights; and (6) she requires the option to sit or stand every 30-60 minutes. (Tr. 18). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to

question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Dr. Donald Hecker.

The vocational expert testified that there existed approximately 14,500 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 243-44). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold).

a. The ALJ Properly Assessed the Medical Evidence

On September 18, 2006, Dr. O'Connor completed an assessment of Plaintiff's ability to perform work-related activities. (Tr. 176-79). The doctor reported that Plaintiff can frequently lift/carry 10 pounds. (Tr. 176). The doctor reported that during an 8-hour workday, Plaintiff can stand and/or walk for less than two hours and can sit for less than six hours. (Tr. 176-77). Dr. O'Connor reported that Plaintiff can "never" climb, balance, kneel, crouch, crawl, or stoop. (Tr.

177).  The doctor reported that Plaintiff can occasionally: (1) reach in all directions (including overhead); and (2) perform gross and fine manipulation activities.  (Tr. 178).  Plaintiff asserts that because Dr. O'Connor was her treating physician, the ALJ was obligated to afford controlling weight to his opinion that during an 8-hour workday, Plaintiff can stand and/or walk for less than two hours and can sit for less than six hours.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate.  *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

The ALJ considered Dr. O'Connor's opinion and accorded it less than controlling weight, stating that:

>the undersigned considered the September 2006 assessment submitted by counsel from Dr. O'Connor (Exhibit 4F). On that document, the doctor listed restrictions largely consistent with the residual functional capacity adopted by the undersigned. The doctor indicated, however, that the claimant could stand and/or walk less than 2 hours in an 8-hour workday, and could sit less than 6 hours in a workday. If Dr. O'Connor is suggesting that the claimant is incapable of all full-time employment, such a view would be rejected as it is not well supported objectively, and it is inconsistent with substantial evidence in the record, not the least of which are Dr. O'Connor's narratives of the claimant's clinical presentation (e.g., intact neurovascular status, stable gait, functional mobility, no nerve root irritation), the results of objective diagnostic evaluations (no stenosis, cord or nerve root embarrassment), and the clinicians own assessments - As discussed earlier, Dr. O'Connor repeatedly indicated that the claimant could work at light duty positions. The evidence unveils no meaningful deterioration in the claimant's condition or functionality warranting a conclusion that she is incapable of sustaining tasks within the confines of the residual functional [capacity] defined above.

(Tr. 20).

As the ALJ correctly concludes, Dr. O'Connor's opinion that during an 8-hour workday, Plaintiff can stand and/or walk for less than two hours and can sit for less than six hours is contradicted by substantial evidence of record, including Dr. O'Connor's treatment notes and conclusions, Plaintiff's reported activities, and the results of objective medical tests. In sum, there exists substantial evidence to support the ALJ's decision to accord less than controlling weight to Dr. O'Connor's opinion.

### b. The ALJ Properly Evaluated Plaintiff's Credibility

At the administrative hearing, Plaintiff testified that her back pain forces her to lay down "once or twice a day" for "one to two hours." (Tr. 232). She further testified that once or twice each month her back goes out incapacitating her for "four to seven days." (Tr. 239). Plaintiff

also testified that she can perform housework activities for "no more than five minutes" before she is forced to sit down. (Tr. 236-37). The ALJ discounted Plaintiff's subjective allegations, finding that her testimony "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 19). Plaintiff asserts that the ALJ failed to give proper weight to her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's

subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

As the ALJ correctly concluded, Plaintiff's subjective allegations of extreme pain and limitation are contradicted by the observations and conclusions of Plaintiff's care providers, the objective medical evidence, and Plaintiff's reported activities. The Court finds, therefore, that there exists substantial evidence to support the ALJ's credibility determination.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: January 7, 2009
/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge